NORTHEASTERN FLORIDA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, a Florida Corporation not for profit, Plaintiff–Appellee,

v.

CITY OF JACKSONVILLE, FLORIDA, a Florida Municipal Corp., Tommy Hazouri, in his official capacity as Mayor of the City of Jacksonville, Defendants–Appellants.

No. 90–3495.

United States Court of Appeals, Eleventh Circuit.

Jan. 28, 1992.

James L. Harrison, City of Jacksonville, Gen. Counsel, Steven E. Rohan, Leonard S.

Magid, Asst. Gen. Counsel, Jacksonville, Fla., for defendants-appellants.

Robert L. Barr, G. Stephen Parker, Deborah A. Ausburn, Southeastern Legal Foundation, Inc., Atlanta, Ga., John W. Caven, Jr., Jacksonville, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

The Northeastern Florida Chapter of the Associated General Contractors of America (AGC) sued, challenging Jacksonville, Florida's contract set-aside program for minority business enterprises (MBEs). AGC, an association of individuals and firms in the construction industry who do business in Jacksonville and are primarily non-minorities for purposes of the set-aside program, filed a 42 U.S.C. §§ 1981 and 1983 complaint alleging that the city's program violated the Equal Protection Clause of the Fourteenth Amendment. The city and its mayor were named as defendants. Plaintiff sought declaratory and injunctive relief against enforcement of the ordinance establishing the set-aside program.

The district court granted a preliminary injunction. On appeal this court reversed, holding:

> The present record is inadequate—especially on irreparable injury—to warrant the extraordinary remedy of preliminary injunction.

*Northeastern Florida Chapter v. Jacksonville, Florida,* 896 F.2d 1283, 1286 (11th Cir.1990). Chief Judge Tjoflat specially concurred. He agreed with the court that the plaintiff had not made a showing of irreparable injury sufficient to support injunctive relief. But he expressed his view

that the decision should have been based on the ground that the plaintiff association lacked standing because it had failed to allege with particularity that its members suffered actual or threatened injury.

Meanwhile the city had filed a motion for judgment on the pleadings or summary judgment, and AGC filed a cross-motion for summary judgment. AGC filed no additional material but relied upon the record that had been presented to this court on appeal. The court granted AGC's motion and entered a permanent injunction on the ground that the city's MBE program suffers from the same constitutional infirmities that the Supreme Court, in *Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), found in the Richmond, Virginia plan. The court did not address the question of whether the record was sufficient, nor did it address the matter of standing discussed in Chief Judge Tjoflat's special concurrence. The city appeals from this judgment.

■ The case has now been decided on the merits. We are squarely presented with the issue of standing.[1]

■ We do not reach the merits of the City's appeal because we find that AGC lacks standing to challenge the ordinance establishing the set-aside program and therefore dismiss the case. In determining whether the court has jurisdiction to entertain AGC's suit, we review the district court's judgment *de novo. Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 777 F.2d 598, 607 n. 24 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

Jacksonville enacted Ordinance No. 83–1200–647, codified at §§ 126.601–126.611 of the Jacksonville, Fla. Purchasing Code (1984) and entitled "Minority Business Enterprise Participation," which provides for affirmative action in the award of city contracts. The ordinance set aside for award

---

1. We are not barred by law of the case principles. The decision in the first appeal did not rule on standing, either expressly or impliedly. Instead, with notice that Chief Judge Tjoflat would base the decision on that ground, it pretermitted the issue. Moreover, after the decision, principles relating to standing in a similar case were addressed and decided by this court in *Cone Corp. v. Fla. Dept. of Transportation,* 921 F.2d 1190 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991).

to MBEs ten percent of the amount allocated to city capital improvement contracts and contracts for goods and services. MBEs awarded contracts pursuant to the ordinance are in turn expected to award 50% of their subcontracting business to MBEs. Jacksonville, Fla. Purchasing Code § 126.607. Section 126.603(a) of the ordinance defines an MBE as a business owned at least 50% by women or members of designated minority groups if the business is privately held and at least 51% so owned if publicly held.

Pursuant to §§ 126.604(b) and 126.605(b), the chief purchasing officer earmarks contracts for bidding by MBEs. Section 126.-604(c) dictates, "[t]he [amount of the] set aside and the projects shall be deemed reserved for minority business enterprises only, and the projects shall be awarded directly to minority business enterprises." The ordinance establishes a prequalification procedure for ascertaining which businesses will have MBE status. *Id.* at § 126.606. The ten percent set aside may be waived by the chief purchasing officer upon evidence of, among other things, the unavailability of minority businesses and the city's cost in meeting the set-aside goals. *Id.* at § 126.608. During the program's five-year tenure, $14,625,000 in contracts was allocated to MBEs on the basis of racial criteria, approximately two percent of the city's total expenditures. There is no evidence as to what percentage of the total capital improvement and other contracts the MBE awards comprised.

■ AGC as a representative association may have standing to challenge the ordinance only if its members as individuals would have standing to litigate their claims. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343–45, 97 S.Ct. 2434, 2441–42, 53 L.Ed.2d 383 (1977). To invoke Article III standing, a plaintiff must (1) demonstrate injury of a direct, personal, economic or noneconomic, actual or threatened, real and not hypothetical nature; (2) show injury resulting from defendant's violation of a constitutional or statutory right; and (3) satisfy the court that plaintiff is within the zone of interests

intended to be protected by the constitution or statute. Plaintiff must also show that the injury "is likely to be redressed by a favorabledecision." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 472, 475, 102 S.Ct. 752, 758, 760, 70 L.Ed.2d 700 (1982) (citations omitted); *accord Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). When, as here, only declaratory and injunctive relief are sought, plaintiff "must demonstrate that he is likely to suffer future injury." *Cone Corp. v. FLA Dept. of Transp.,* 921 F.2d 1190, 1203 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991). Finally, plaintiff must plead standing through "specific, concrete facts." *Id.* at 1204 (citing *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975)).

■ Plaintiff is unable to demonstrate injury of an economic nature. While over $14,000,000 in contracts was allocated to minority contractors during the set-aside program's five-year tenure, plaintiff has not demonstrated that, but for the program, any AGC member would have bid successfully for any of these contracts. *See Coral Constr. Co. v. King County,* 941 F.2d 910, 930 (9th Cir.) ("question is whether [plaintiff] has alleged a more certain injury than a potential lost bid"), *cert. denied,* — U.S. —, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). AGC contends that the set-aside program acts as an absolute bar to non-minority bidding for certain city contracts. While AGC is correct that the city's program operates by designating certain contracts for bidding solely by MBEs, it has not alleged that its members would have bid successfully on any one or more of these contracts if not for the ordinance. We are barred by the decision in *Cone,* where a challenge by non-minorities to a set-aside program similar in operation to Jacksonville's was rejected for lack of standing because plaintiffs did not allege any specific contract lost on account of race. 921 F.2d at 1205–06; *accord Capeletti Brothers, Inc. et al. v. Broward County,* 738 F.Supp. 1415, 1417 (S.D.Fla. 1990) (plaintiff failed to specify particular

project by which it suffered injury), *aff'd,* 931 F.2d 903 (11th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). AGC also alleges that it has been forced to discriminate in the award of its subcontracts so as to comply with the ordinance, presumably with a loss of profits. Again it fails to cite any specific subcontracts involved.

Plaintiff has not alleged specific noneconomic harm either. *See U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (holding noneconomic harm satisfies Article III standing requirements).

Since AGC has not demonstrated any injury, we need not consider the other components of Article III standing.

The judgment of the district court is VACATED and the case is REMANDED with the instruction that it be dismissed without prejudice.